k2a2SueS kjc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          18 Cr. 827(GHW)

5   MIYUKI SUEN,

6              Defendant.

7   ------------------------------x       Sentencing

8                                         February 10, 2020
                                          4:20 p.m.
9

10  Before:

11                  HON. GREGORY H. WOODS,

12                                        District Judge

13

14                       APPEARANCES

15
    GEOFFREY S. BERMAN
16       United States Attorney for the
         Southern District of New York
17  BY:  DANIEL G. NESSIM
         Assistant United States Attorney
18

19  STEVEN G. BRILL
         Attorney for Defendant
20

21

22  ALSO PRESENT:

23  JIANHANG MAI, Mandarin Interpreter

24  JEREMY J. ROSS, HSI

25

k2a2SueS kjc

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3     for the record.

4          MR. NESSIM:  Good afternoon, your Honor.  Daniel

5     Nessim for the government.  Joining me at counsel table is

6     Special Agent Jerry Ross of Homeland Security Investigations.

7     I apologize to the court for the late start.

8          THE COURT:  That's fine.  Good afternoon.

9          MR. BRILL:  Good afternoon, your Honor.  Sullivan &

10    Brill, by Steven Brill, on behalf of Ms. Suen.  How are you?

11         THE COURT:  Good.  Thank you very much.

12         We are here to conduct a sentencing hearing for

13    Ms. Suen.

14         Let me note for the record that we are using the

15    services of an interpreter here today.

16         Ms. Suen, can you hear and understand me clearly now?

17         THE DEFENDANT (In English):  Yes.

18         THE COURT:  Thank you.

19         Please let me know if at any time you have any

20    difficulty hearing or understanding anything that I or anyone

21    else says in the courtroom --

22         THE DEFENDANT (In English):  Yes.

23         THE COURT:  -- here today, okay?

24         MR. BRILL:  Your Honor, may I just say something?

25    Ms. Suen does speak English and understands English.  We

k2a2SueS kjc

1    thought it would be best for the purposes of this hearing that,

2    in an abundance of caution, she uses the Chinese interpreter.

3            THE COURT:  That's good.  Thank you.

4            To the extent that we are using the Chinese

5    interpreter, the one thing that I would ask is that Ms. Suen

6    consider waiting to hear the entirety of the translation before

7    responding in whatever language she chooses to respond in.  The

8    interpreter would translate anything that I say into Mandarin

9    and, in the same way, to the extent that she chooses to address

10   the court in Mandarin, the interpreter will do a translation of

11   those statements into English.

12           So I have received and reviewed the following

13   materials in connection with this sentencing:

14           First, the presentence report which is dated December

15   12, 2019;

16           Second, the defendant's sentencing memorandum, which

17   is dated January 27, 2020, together with its exhibits;

18           Third, the government's sentencing memorandum, which

19   is dated February 3, 2020; and,

20           Fourth, the victim impact statement, which is dated

21   December 18, 2019.

22           Have each of the parties received all of these

23   materials?

24           MR. NESSIM:  Yes, your Honor.

25           MR. BRILL:  Yes.

k2a2SueS kjc

1          THE COURT:  Thank you.

2          Have each of the sentencing memoranda been filed with

3    the Clerk of Court?

4          MR. NESSIM:  Yes.

5          MR. BRILL:  Yes, your Honor.

6          THE COURT:  Thank you.

7          Are there any other submissions in connection with

8    this sentencing?

9          MR. NESSIM:  Not from the government, your Honor.

10          MR. BRILL:  None from the defendant.

11          THE COURT:  Thank you.

12          Let me turn first to counsel for defendant.  Counsel,

13    have you read the presentence report?

14          MR. BRILL:  I have.

15          THE COURT:  Thank you.

16          Have you discussed it with your client?

17          MR. BRILL:  Yes.

18          THE COURT:  Thank you.

19          Let me turn to your client.

20          Ms. Suen, has the presentence report been translated

21    for you?

22          THE DEFENDANT (In English):  Oh, no.

23          THE COURT:  Thank you.  You can remain seated until I

24    ask you to stand.

25          Have you read it in English?

k2a2SueS kjc

1              THE DEFENDANT (In English):  Yes.

2              THE COURT:  Thank you.

3              Did you fully understand it?

4              THE DEFENDANT (In English):  Yes.

5              THE COURT:  Thank you.

6              Have you discussed the presentence report with your

7      counsel?

8              THE DEFENDANT (In English):  Yes.

9              THE COURT:  Have you had the opportunity to review

10     with your counsel whether there are any errors in the

11     presentence report and whether there are any other issues in

12     the presentence report that should be addressed by the court?

13             THE DEFENDANT (In English):  I totally understand.

14             THE COURT:  Thank you.

15             Have you had the opportunity to review with your

16     counsel whether there are any errors in the presentence report.

17             THE DEFENDANT (In English):  No.

18             THE COURT:  Thank you.

19             Have you had the opportunity to with him whether there

20     are any errors in the report, regardless of whether or not

21     there were any errors in the report?

22             THE DEFENDANT (In English):  Yes.

23             THE COURT:  Thank you.

24             Have you had the opportunity to review with your

25     counsel whether there are any issues with the presentence

k2a2SueS kjc

1    report that should be raised with me?

2             THE DEFENDANT (In English):  Yes.

3             THE COURT:  Thank you.

4             Counsel for the United States, let me turn to you.

5    Have you read the presentence report?

6             MR. NESSIM:  Yes, your Honor.

7             THE COURT:  Thank you.

8             Does the government have any objections related to the

9    factual accuracy of the presentence report?

10             MR. NESSIM:  Only with regard to paragraph 50, which

11   deals with restitution, and we have addressed in prior

12   sentencing proceedings.

13             THE COURT:  Thank you.

14             I understand that the issue that the government is

15   raising is that the restitution amount listed -- that the

16   amount listed in paragraph 50 is $140,202.93, whereas, as I

17   understand it from prior proceedings, that the appropriate

18   number is 146,202.93.

19             Is that the concern, counsel for the United States?

20             MR. NESSIM:  Yes, your Honor.  And also, if we could

21   strike the clause that it is "based on the retail value of the

22   infringing items."  It should just read it is "based on the

23   amount that the victim expended on brand protection."

24             THE COURT:  Thank you.

25             Counsel for defendant, do you agree with those

k2a2SueS kjc

1    proposed modifications to paragraph 50?

2            MR. BRILL:  We do.  We were provided with that

3    modified restitution amount and the reasons for it, and I have

4    spoken to my client about it and we are prepared to stipulate

5    to that.

6            THE COURT:  Thank you.  Good.

7            So I will accept the stipulation of the parties with

8    respect to the modifications to paragraph 50.  As a result of

9    those stipulated modifications, the reasonably foreseeable loss

10   amount will be $146,202.93, and we will delete from the

11   paragraph the clause that reads, "the retail value of the

12   infringing items and."  Good.

13           So counsel for defendant, given those changes to

14   paragraph 50, do you have any objections related to the factual

15   accuracy of the presentence report?

16           MR. BRILL:  No, your Honor.

17           THE COURT:  Thank you.

18           Given that there are no objections to the factual

19   recitations in the presentence report, the court adopts the

20   factual recitations in the presentence report.

21           The presentence report will be made a part of the

22   record in this matter and will be placed under seal.  If an

23   appeal is taken, counsel on appeal may have access to the

24   sealed report without further application to the court.

25           Now, although district courts are no longer required

k2a2SueS kjc

1    to follow the sentencing guidelines, we are still required to

2    consider the applicable guidelines in imposing sentence; and,

3    to do so, it is necessary that we accurately calculate the

4    advisory sentencing guidelines range.

5           In this case, the defendant pleaded guilty to Count

6    One of the indictment in this case.  The defendant pleaded

7    guilty to the offense of conspiracy to traffic in counterfeit

8    goods in violation of Title 18 United States Code Section 2320.

9           Counsel for the United States, does the government

10   agree that a two-level adjustment is appropriate here under

11   Section 3E1.1(a)?

12          MR. NESSIM:  Yes, your Honor.

13          THE COURT:  Thank you.

14          Is the government moving for an additional one-level

15   reduction pursuant to Section 3E1.1(b)?

16          MR. NESSIM:  Yes, your Honor.

17          THE COURT:  Thank you.

18          I calculate the sentencing guidelines in a manner

19   consistent with the plea agreement in the presentence report.

20   The applicable sentencing guidelines manual is the November 1,

21   2018 sentencing guidelines manual.

22          The base offense level is determined pursuant to

23   Section 2B5.3(a).

24          Because the value of the infringing goods was greater

25   than $550,000 and less than $1.5 million, 14 offense levels are

k2a2SueS kjc

added pursuant to Section 2B5.3(b)(1) and 2B1.1(b)(1)(H).

Because the offense involved the manufacture and importation of infringing items, a two-level increase is warranted pursuant to Section 2B5.3(b)(3)(A).

Because the defendant has demonstrated acceptance of responsibility for her offense through her plea allocution, I have applied a two-level reduction pursuant to Section 3E1.1(a).

Upon motion by the United States, an additional one-level reduction is warranted under Section 3E1.1(b).

As a result, the applicable guidelines offense level is 21.

The defendant has no criminal history points.  As a result, the defendant is in criminal history category I.

In sum, I find that the offense level is 21 and that the defendant's criminal history category is I.  Therefore, the guidelines range in this matter is 37 to 46 months of imprisonment.

Does either party have any objections to the sentencing guidelines calculation?

MR. NESSIM:  No, your Honor.

MR. BRILL:  None from the defendant.

THE COURT:  Thank you.

Let me turn first to counsel for the defendant.

Counsel, do you wish to be heard with respect to

k2a2SueS kjc

1    sentencing?

2              MR. BRILL:  If your Honor pleases, yes.

3              THE COURT:  Thank you.  Please proceed.

4              MR. BRILL:  Your Honor, if I may, first, just inform

5    the court as to who is sitting here before you.

6              Ms. Suen's sister-in-law in the front row.  In the

7    second row is Ms. Suen's mother and grandmother, who is here

8    with the assistance of a walker, but obviously felt it

9    significant enough to rise up and make the appearance for

10   today.  And then behind them is Ms. Suen's son, as well.

11             I start just by reiterating, your Honor, with respect,

12   what we had asked the court to do with respect to sentencing,

13   and that is to sentence Ms. Suen to a variant sentence from the

14   guidelines, to a sentence of home confinement and a term of

15   supervised release.  To support that request, obviously, I

16   presented our arguments with the sentencing memorandum, which

17   I'm sure the court has read, but I do want to just highlight

18   some important aspects of the submission.

19             I would first just start by saying that probation also

20   has come to the conclusion that, in their own opinion, they

21   would recommend that your Honor deviate from the sentencing

22   guidelines and vary below what the guidelines state.  In their

23   words, in the presentence report, they had stated that Ms. Suen

24   does not appear to be a danger to society as she has no history

25   of violence and has demonstrated herself to be a cooperative

k2a2SueS kjc

1    and productive individual while under supervision, and that was

2    the crux of their reasoning as to why they felt a mitigating

3    sentence was appropriate.

4            They were, though, concerned with a prior contact that

5    Ms. Suen may have had several years ago, and perhaps the court

6    may be concerned with that as well.  And I would just briefly

7    address that by saying that this is an incident, to my

8    understanding, that occurred regarding the selling of goods in

9    a flea market in Pennsylvania that were alleged to be

10   counterfeit, that the incident occurred approximately ten years

11   ago, and that, perhaps most importantly, the incident did not

12   result in a criminal conviction, obviously, and that's why

13   Ms. Suen stands before you with no criminal history.

14           So to the extent that those things mitigate your

15   Honor's concern, I would hope that you view that for what it is

16   and perhaps pay more weight to the instant case and obviously

17   her conduct here, but also the mitigation that we submitted for

18   the court's consideration.

19           I do just want to begin by also addressing maybe the

20   implication in the government's submission, which really came

21   down to a sentence, which was Ms. Suen did this for the money,

22   or that this crime was committed for the money.  And obviously

23   to some extent that's true.  I don't dispute that there is an

24   incentive here to improperly derive money.  But I wanted to

25   make sure that the court did not look at this case and look at

1    Ms. Suen with the impression that we are dealing with someone

2    who is perhaps greedy or opportunistic.

3            Obviously she admits her conduct.  She admits her

4    guilt.  She committed a crime, and as part of that she is now

5    prepared to suffer the consequences.  But I do want to give the

6    court at least an understanding of who she is and how the way

7    in which she has lived her life has been everything but greedy

8    or opportunistic or selfish.  Hopefully your Honor got the

9    flavor while reading the submission, but there were several

10   aspects of her life that we learned about that I thought were

11   important to mention now.

12           The first is just her son, who is here, Justin, who

13   also wrote a letter, but describes their relationship by saying

14   "I am supported by my mother every day, and she never gives up

15   on me, even though I have not given much back to her.  My mom

16   has been there my whole life."

17           As your Honor may have read, Ms. Suen has been a

18   single mother for almost the entirety of Justin's life.  I

19   think he is 20 and -- or he is 19.  And Ms. Suen -- the father

20   of Justin left Ms. Suen when he was about one year old.  So

21   since then, Ms. Suen has raised Justin to the individual he is

22   now, who is a student at Manhattan Community College and, by

23   all accounts, when I have met him, is a real upstanding

24   individual, but that's because of the selflessness on the part

25   of Ms. Suen.

1          In addition to those words by Justin, he also wrote to

2     your Honor that "my mother would always work as hard as she

3     could so she could get food in my stomach and always made sure

4     I would have enough to support myself.  She would always give

5     back and give it her all, even though she is tired and didn't

6     have much money."

7          So of course this does not excuse her conduct, but it

8     certainly hopefully gives the court another impression that we

9     are dealing with a very dedicated mother and a good mother, and

10     someone who cares very much that her son is raised as best as

11     possible, even though Ms. Suen had very limited means.

12          Her selflessness didn't end with her son.  What she

13     does now, even since she has been arrested, your Honor, and has

14     been doing full-time, is working at a senior center in

15     Woodhaven, Queens, which is essentially an adult daycare

16     center, where individuals are about 65 years and older, mostly

17     Spanish speakers, of Hispanic dissent, who are here in the

18     United States, that range from 65 to 99 years old.  And in that

19     center that Ms. Suen works in full-time, they are given

20     breakfast.  For the women individuals that are there, their

21     nails are done.  They are given lunch.  They play dominoes.

22     They play bingo.  There are some terminally ill people in

23     there, as well.

24          So this is her job right now and it has been since she

25     has been arrested and perhaps before that, before she was

1    arrested on this instant matter.  So that should give the court

2    also an even fuller understanding of how she spends her days,

3    giving back to people and to society.

4            And then, of course, there are letters in support of

5    her —— of her goodness and who she is as a person.  And I will

6    just pick out a few, I'm sure your Honor has read them, but

7    just perhaps for this occasion it makes sense, Joelle Lum, who

8    is a friend of hers for five years, mentions that "Ms. Suen has

9    small gestures of kindness and has added up over the years and

10   proved to me that Ms. Suen is extremely caring and giving.  I

11   am even more grateful to Ms. Suen because she has been a second

12   mother to my boyfriend Matthew, who is Justin's best friend,"

13   and then she goes on by saying "Ms. Suen is very hard working."

14           Renee Jin, who has been a friend of Ms. Suen's for 23

15   years, mentions that "it is unfortunate that she is going

16   through this particular difficult time, but I believe that her

17   strength and moral character will allow her to prove her to be

18   an outstanding contributor to society."  And I would hopefully

19   impress upon the court, respectfully, that that should be in

20   your Honor's —— part of your Honor's consideration that when

21   this sentence is completed, that you are looking at someone who

22   has the potential and has been a contributor to society.

23           Matthew Lau, who is a friend of Justin's, felt

24   compelled to write a letter by saying, "Miyuki is like a mother

25   to me, and she is loving, caring, respectful, and very kind for

k2a2SueS kjc

being there for me and helping me grow up into the man I am

today.  She teaches us many morals in life and to give a second

chance to others, and now I'm begging you to please give Miyuki

Suen a second chance so that her friends, family, and I won't

have to lose someone that is dear to us."

Pun Tong, who is Ms. Suen's ex-sister-in-law, says

that, "Although she is divorced with my brother, she is forever

my sister-in-law because she always took care of my mother and

spent quality time with her.  My mom had a ruptured aneurysm

four years ago.  She survived her first rupture and required a

lot of time and care during rehab.  Miyuki was there, rain or

shine, to visit, spend time, and took good care of my mom."

And then the last letter, your Honor, which I thought

was somewhat nicely -- thoughtful, which was written by Thuc

Phan Quan, essentially spells out the acronym of "care,"

C-A-R-E, and says the "C represents connect, and that Ms. Suen

stays connected with her extended family; A is an awareness,

and Ms. Suen is aware of the care, comfort, and attention

senior citizens need; the R represents respect; and the E

stands for empathy."

So obviously this should not, and I don't mean it to

take away from the essentially the opposite conduct that was

engaged in by Ms. Suen and that she made the awful choice to

break the law and to do it for financial gain, but it hopefully

should help to give the court a more full understanding of who

k2a2SueS kjc

1    exactly she is outside of this particular case.

2            Outside of the senior center, her work history is also

3    admirable.  I'm not sure there has been any time, other than

4    perhaps when Justin was young, where Ms. Suen was not working

5    in a gainful employment setting.  She was a salesperson at a

6    bath supply store, she was a bartender, and then, again, most

7    recently, at a senior center in Queens.  So she has been

8    constantly working productively outside of this particular case

9    and outside of this particular conduct.

10            I won't reiterate the history that we had laid out for

11   the court in terms of Ms. Suen's childhood.  I know sometimes

12   it is hard to connect someone's childhood with decisions that

13   they make so many years later, and I know how difficult that

14   is, and I don't mean to gloss over it, but I think it is

15   important to -- at least for the court to understand how hard

16   she has worked in her life and where she has come from and how

17   she has struggled until this point.

18            It was somewhat of an unfortunate childhood, where she

19   was born in China but left with her grandparents in Hong Kong

20   only so that her parents can bring her son from Hong Kong here

21   to the United States, and that Ms. Suen was essentially left

22   there and wasn't brought over to the United States until she

23   was 20 years old.

24            You know, perhaps that adds to someone's feelings of

25   self-worth or self-esteem, and perhaps that is why she is such

k2a2SueS kjc

1    a hard worker and struggles and does what she can in order to

2    survive here in this city and also as a single mother.  But of

3    course we -- many people struggle, and that doesn't mean that

4    they have to engage in criminal conduct in order to make ends

5    meet.  So obviously I don't condone that, and I would never

6    argue that.  But that explains it, that she is financially

7    struggling here in order to make ends meet and she -- to the

8    extent that she must live with her mother at her age, she is 45

9    years old, and that essentially to supplement the income that

10   she is making with the adult center, she chose to engage in

11   this conspiracy in order to make additional money.

12          I will just add that from our -- upon our information

13   and belief, in looking at her tax returns, and I think this is

14   borne out by probation's report as well, that her 2018 adjusted

15   gross income was $15,000, so certainly below the poverty level

16   there or close to it.

17          So if I could just discuss briefly the nature and

18   circumstances of this particular case and I don't -- Ms. Suen

19   does not shirk from her responsibility here or deviate from

20   what she has said, but that essentially her struggling and her

21   need and perhaps the necessity for additional income makes

22   people do wrong things and bad things, and I think -- but then

23   people for some reason do them anyway, and I think that what we

24   have here is that particular decision-making and that

25   particular conduct, and not someone who is a greedy or

k2a2SueS kjc

1    opportunistic or searching for the next scam or fraud that they

2    can join and victimize individuals.  I don't see any evidence

3    that that's the type of person that Ms. Suen is.

4            There has been real remorse from Ms. Suen.  I have

5    spoken to her a lot in this case, and each time it is a very

6    deflated conversation, and it is not because the jig is up and

7    she is caught and she is upset that it had to come to an end

8    and she has to get out of it, it's that she beats herself up

9    over the fact that she has engaged in this and it is certainly

10   humiliating in the face of her mother, her grandmother, and her

11   son.  That's certainly not the strong woman that she was or

12   wants to be viewed as.

13           There is some question about her actual conduct.  The

14   last thing I want to do is litigate that now, because I don't

15   want it to be misunderstood that I'm trying to minimize my

16   client's conduct, but I can't help but take issue with some of

17   the government's -- the way the government views Ms. Suen in

18   this particular case.  I will just submit to the court

19   respectfully that -- well, the government essentially is saying

20   that she played a central role, these are their words,

21   relatively deep involvement in the conspiracy, and I think

22   that, respectfully to the government, that that overstates

23   Ms. Suen's conduct and involvement here.  We would submit that

24   Ms. Suen, despite her conduct here, which we don't dispute,

25   which is that she is there supervising individuals who are

loading and unloading merchandise from a warehouse on to a
truck and vice versa, and we don't dispute that there was
communication between her and members back in China, but we
would hope that we would look at that for -- as honestly as to
what that is.

First of all, Ms. Suen is not a high-level
decision-making member of this conspiracy.  She is not making
decisions about it or leading it or organizing it or managing
any members of the conspiracy except, except with respect to
her being present when items were being loaded in and out of
warehouses, of which she made a very nominal sum from.
Certainly she did not derive any meaningful profit from the
sale of these items or didn't sell these items, but merely she
is being paid on a *per diem* basis when she engages in her
conduct to facilitate the conspiracy.  So certainly part of the
conspiracy, but I wouldn't call her a relatively deep
involvement or central role.

With respect to the conversations with individuals in
China, my understanding is that that was not as someone who
plays a part or has a part in the brokering of getting
merchandise from China and bringing it to the states and sort
of like -- as sort of a management position where she is part
of the process of the importation, but rather that what our
understanding was is that Ms. Suen is one of the rare instances
of -- or has the ability to speak English as well as Chinese

1    and was being asked to interpret for other individuals who did

2    not speak Chinese who were engaged in the receiving and selling

3    of items.  So again, this does not excuse the conduct and it is

4    still criminal, but it is not as -- it is not perhaps what the

5    government is alluding to, which is that she is making these

6    decisions and she is right up there with the people that are

7    actually importing the tens of thousands of sneakers into this

8    country.

9         There is no evidence that she played any role in that

10   other than these chats.  There is no evidence that she

11   certainly derived any meaningful income, no evidence of that

12   from something like that, and so I would ask respectfully that

13   the court views that in the light that we are presenting or at

14   least considers that when deciding how big a role-player

15   Ms. Suen was.

16        Along those same lines, your Honor has already

17   sentenced individuals, and obviously your Honor is aware of the

18   need to avoid unwarranted sentencing disparities, and I don't

19   mean to -- obviously the court is well aware of that.  But I do

20   just want to perhaps submit that I know that recently your

21   Honor sentenced Jian Min Huang to a term of a year and a day

22   and I couldn't help but -- in deciding whether -- how Ms. Suen

23   fits into this and how she compares to the other

24   coconspirators, that it was hard for me to distinguish Ms. Suen

25   clearly from Ms. Huang.  I imagine there are some facts that

k2a2SueS kjc

1   are different, but in the totality of it, as I read the

2   government's submission of Ms. Huang, I read the government

3   saying that -- this is a quote, that "Jian Min Huang had an

4   important role in the conspiracy.  She served as the main point

5   of conduct for the law enforcement confidential source.  The

6   confidential source would contact Huang to purchase counterfeit

7   sneakers and Huang would arrange for the delivery of the

8   sneakers and accept payment.  Huang sold counterfeit sneakers

9   to the confidential source on at least nine occasions over

10  approximately three months and, in recorded phone calls with

11  Huang and the confidential source, Huang's remarks reveal the

12  sophistication of the scheme and her important role in it."It

13  also goes on to say that "Huang attempted to delay deliveries

14  and avoid detection."

15          Of course Ms. Huang has been sentenced, and I bring

16  this up only to the extent that your Honor can consider her

17  conduct and Ms. Suen's conduct when evaluating whether or not

18  there is a potential for a sentencing disparity.  I understand

19  the roles are a bit different and that Ms. Huang didn't do what

20  Ms. Suen did but it's, frankly, hard to draw a stark contrast

21  between them both in that they both seemed to play integral

22  roles in the facilitation of the conspiracy.  And so we would

23  hope that your Honor avoids any unwarranted sentencing

24  disparities.

25          Just a quick comment, your Honor, if I may, about the

k2a2SueS kjc

1   loss factor here.  Obviously we don't dispute it.  We stipulate

2   to what was in the plea agreement.  But I would be remiss if I

3   didn't mention for your Honor's consideration surely something

4   that the court already knows, but that the loss factor is a

5   seriously debatable issue in how much it generates the

6   guideline calculation and that many district judges have opined

7   on that in very thoughtful ways.

8        If I can just read Judge Rakoff's on the Gupta matter

9   a few years ago, which was this:  Imposing a sentence on a

10  fellow human being is a formidable responsibility.  It requires

11  a court to consider with great care and sensitivity a large

12  complex of facts and factors.  The notion that this complicated

13  analysis and moral responsibility can be reduced to the

14  mechanical adding up of small sets of numbers artificially

15  assigned to a few arbitrarily selected variables wars with

16  common sense -- wars with common sense.  Whereas apples and

17  oranges may have but a few salient qualities, human beings in

18  their interactions with society are too complicated to be

19  treated like commodities, and the attempt to do so can only

20  lead to bizarre results."

21       So that's, unfortunately, this case and many others

22  that the loss table essentially galvanizes the guideline to the

23  point where the bulk of the advisory guideline range is as a

24  result of that loss number, and so I would hope that the court

25  sees that and understands -- obviously the court does, but that

k2a2SueS kjc

1    I would just reinforce the idea that the court perhaps should

2    pay less attention to how great a value that has and perhaps

3    more attention to Ms. Suen.

4         There is also another quote by a fellow district

5    judge, Judge Underhill, who is not in this district, but that

6    judge opines by saying that "not all actual loss is equally

7    serious, and that a fraud that results in the loss of even a

8    few thousand dollars by an elderly or sick person who, as a

9    result of the loss, becomes unable to afford the necessities of

10   life or medical care is much more serious than a fraud that

11   results in ten or 100 times that loss by a large corporation

12   able to absorb the financial consequences without a need to

13   close plants, fire employees, or even declare the loss as

14   material in public or financial reports."

15        So it logically follows that we are dealing with a

16   multibillion-dollar corporation, and that does not take away

17   from the crime or the conduct or the amount of money that is

18   essentially lost, but it does -- it should hopefully focus the

19   court a bit on how much weight to give the loss.  Obviously it

20   has great weight in the guidelines irrespective of whether we

21   are dealing with a multibillion-dollar corporation or an

22   individual who has been victimized and has suffered greatly.

23   So hopefully the court can, again, weigh that accordingly.

24        A couple last things that I will just say with respect

25   to deterrence, which I know this court and every sentencing

k2a2SueS kjc

1    court is very concerned about.  If I could just be frank and

2    say, when we are talking about general deterrence, you know, in

3    this city alone, a couple blocks away, the idea of counterfeit

4    and trademark violation goods are being bought and sold

5    constantly and with the knowledge of the people that sell it

6    and the people that buy it.  That does not excuse it, but it is

7    unclear how a jail sentence or even -- a guidelines sentence or

8    a jail sentence could do much as far as a general deterrent.

9    So hopefully that can inform the court's idea of general

10   deterrence and how the sentence will play.

11           But with respect to, specifically, like I said,

12   Ms. Suen has showed me nothing more than remorse and sadness,

13   just the idea that she has gotten herself into this spot.  But

14   the fact also that she is going to be perhaps separated from

15   her child, someone that she still is raising single-handedly is

16   perhaps the worst of it all.  But for someone who is 45 years

17   old, with no criminal history, there is a real sadness, and I

18   would submit that certainly, no matter what sentence your Honor

19   gives, even home confinement or supervised release, that this

20   experience will deter Ms. Suen in the future from engaging in

21   anything like this.

22           Lastly, I will say that, if your Honor is

23   contemplating an incarceratory sentence, that you would allow

24   Ms. Suen the ability to surrender herself voluntarily.  She has

25   complied with all aspects of pretrial.  You haven't seen her

1   once with any specific violation.  And, in fact, just the

2   recently Pretrial Services officer reiterated that fact and is

3   very happy with her behavior.  So we are not dealing with

4   someone who is not going to comply with your Honor's sentence

5   should your Honor allow her the ability to surrender.

6            Thank you very much for your consideration.

7            THE COURT:  Good.  Thank you very much, counsel.

8            Let me turn to the defendant.  Ms. Suen, do you wish

9   to make a statement to the court.

10           THE DEFENDANT (In English):  Yes.

11           Dear Judge Wood, I know what I do is wrong.  I been

12  learn my lesson.  With the year I have the GPS on my feet,

13  every day I think about this.  I understand what I do is wrong,

14  and please give me a chance to stay with my son, my parents.

15  And I have one 90 years old grandma in China.  I call her every

16  week to ask how she is doing, and please give me a chance to be

17  a good granddaughter.  And also in the senior center I work

18  right now, I go there every day, I try to make all the senior

19  people happy.  I try to make them laugh every day.  I try to

20  take care of them like my grandparents, drive them from them

21  house to the senior center and drive they home, make sure they

22  happy every day.  And I make sure they take the medicine.  If

23  they have any problem they always talk to us.  We treat them

24  like our own grandparents, too.  So please give me a chance to

25  serve them every day.  And I really learn my lesson, so please

k2a2SueS kjc

1   give me a chance to walk outside every day.

2              Thank you.

3              THE COURT:  Thank you, Ms. Suen.

4              Counsel for the United States, does the government

5   wish to be heard with respect to sentencing?

6              MR. NESSIM:  Yes, your Honor.

7              This is the court's fourth sentencing in this case.  I

8   know the court is very familiar with this offense and the

9   complexity of the scheme, its breadth, the flagrancy of the

10  broader scheme, and the harm it's caused to its primary victim,

11  but also to the public at large and retailers as it is

12  recounted in the victim impact statement.  So I won't recount

13  any of that before the court today.

14             I just want to focus on a few points before the court

15  imposes sentence.

16             First is the money aspect which defense counsel

17  raised.  You know, we don't have an ability to -- we don't

18  really have a strong ability to contest the defendant's

19  statements about how she was paid and her overall financial

20  condition.  However, this is a cash industry, and we are not

21  sure that her financial picture adequately takes into

22  consideration what she has made as a result of this scheme.

23  And we just note that it seems like she maintains two

24  residences, one of which seems to be a nonprimary residence in

25  a quite nice building for which she obtained some type of

1   Section 8 housing credit, so we are not sure that the money

2   alone, as recounted by defense counsel, tells the full story

3   here.

4           In addition, just turning to this defendant's

5   individual culpability, to clarify a point raised by defense

6   counsel, we do not take the position and we did not -- the plea

7   agreement does not contain and we don't say now that a sort of

8   management or leadership enhancement is appropriate here.

9   However, we do think that in the course of this conspiracy, and

10  among the defendants who were arrested, Ms. Suen is among the

11  most culpable in the scheme, and her culpability is perhaps

12  similar to Ms. Huang, who was recently sentenced by the court,

13  but somewhat different.

14          Ms. Suen was surveiled and admitted as someone who

15  coordinated the unloading and transportation of the boxes of

16  the raw shoes and also the shoes that had been manufactured

17  with counterfeit trademarks, and that indicates that she is

18  someone who is trusted to control the location, transportation,

19  and decision about when those shoes should be moved.  She

20  emptied out a location that was a storage location.  You know,

21  that was her coordinating that, at least directing things on

22  that day.

23          In addition, the phone that was recovered showed that

24  Ms. Suen does have contacts overseas with which she can discuss

25  the production and importation of counterfeit shoes, and I

k2a2SueS kjc

think the quotations just show her knowledge of the

counterfeiting industry, shoes in particular, selling the high

quality stuff in New York and the bad stuff in Atlanta, you

know, samples of these shoes, trade fairs taking place in

China, to showcase the quality of the shoes being produced.

So we do think that Ms. Suen is someone who is on the

more culpable side of the defendants charged in the scheme,

certainly more culpable than either Fangrang Qu or Sounghua Qu,

who have also been sentenced by the court.

Finally, in terms of deterrence, I think that we very

much disagree with defense counsel on both general and specific

deterrence, and I think that the defendant's case is actually a

good example of the importance of both -- of an incarceratory

sentence to advance both general and specific deterrence here.

The defendant's prior -- the ticket that's recounted

in the Pretrial Services report was basically a slap on the

wrist.  It's not a conviction, and we don't really know the

details, but it seems she obtained a ticket for dealing

counterfeit goods more than ten years before her arrest in this

case, and that was disposed of without really any, it seems,

any sort of court process or punitive proceeding, and that did

not deter this defendant from continuing to engage in

counterfeit goods.  You know, we don't know that that entire

more than ten-year span she was involved in counterfeiting, but

she was at least somewhat involved in it by the time of this

k2a2SueS kjc

1    scheme to be having these kinds of conversations with overseas

2    sources, to be overseeing operations in part in the New York

3    City area.

4            So I think that the defendant's case is a good example

5    of both the general and specific deterrent advantages of

6    actually -- not advantages, but the value to general and

7    specific deterrence, of taking these cases seriously and

8    sentencing within the guidelines range and certainly a

9    sentence -- an incarceratory sentence in advancing those acts.

10           So if the court has any further questions, that's all

11   from the government.

12           THE COURT:  Good.  Thank you very much, counsel.

13           So thank you very much, counsel and Ms. Suen.

14           Is there any reason why a sentence should not be

15   imposed at this time?

16           MR. NESSIM:  No, your Honor.

17           MR. BRILL:  No, your Honor.

18           THE COURT:  Thank you.

19           I will now describe the sentence that I intend to

20   impose, but counsel will have a final opportunity to make legal

21   objections before the sentence is finally imposed.

22           As I have stated, the guidelines range applicable to

23   this case is 37 to 46 months of imprisonment.  I have

24   considered the guidelines range.

25           Under the Supreme Court's decision in *Booker* and its

k2a2SueS kjc

1    progeny, the guidelines range is only one factor that I must

2    consider in deciding the appropriate sentence.  I am also

3    required to consider the other factors set forth in 18 U.S.C.

4    Section 3553(a).  These include:

5              First, the nature and circumstances of the offense and

6    the history and characteristics of the defendant;

7              Second, the need for the sentence imposed to (a)

8    reflect the seriousness of the offense, to promote respect for

9    the law, and to provide just punishment for the offense; (b) to

10   afford adequate deterrence to criminal conduct; (c) to protect

11   the public from further crimes of the defendant; and (d) to

12   provide the defendant with needed education or vocational

13   training, medical care, or other correctional treatment in the

14   most effective manner;

15             Third, the kinds of sentences available;

16             Fourth, the guidelines range;

17             Fifth, any pertinent policy statement;

18             Sixth, the need to avoid unwarranted sentence

19   disparities among defendants with similar records who have been

20   found guilty of similar conduct; and

21             Seventh, the need to provide restitution to any

22   victims of the offense.

23             Ultimately I'm required to impose a sentence that is

24   sufficient, but not greater than necessary, to comply with the

25   purposes of sentencing as reflected in the statute.

k2a2SueS kjc

1          Based on a review of all of the factors which I'm

2    going to discuss in more detail in a moment, I intend to impose

3    a nonguidelines sentence of a year and a day of imprisonment,

4    to be followed by two years of supervised release subject to

5    the mandatory and special conditions described in the

6    presentence report, which I'm going to detail with more

7    specificity in a moment.

8          I do not expect to impose a fine.

9          I expect to order restitution.

10          I will impose the mandatory fee of $100.

11          Let me begin by saying a few words about the nature of

12    this offense, because it was a serious offense:

13          Ms. Suen was involved in a conspiracy to manufacture

14    and sell counterfeit goods.  The criminal conduct of these

15    conspirators was bold and sophisticated.  The conspirators

16    imported generic sneakers into the United States that looked

17    like Nike Air Jordans but did not bear the trademark Swoosh and

18    Jumpman icons.  Once the generic shoes arrived in the United

19    States, they were altered to add those trademarked logos and

20    marks, turning the generic shoes into counterfeit Air Jordans

21    which the conspirators could sell in the United States at a

22    significant profit.

23          The NYPD and Homeland Security Investigations

24    inspected a number of shipping containers containing the

25    generic sneakers.  They observed members of the conspiracy,

1    including Ms. Suen, directing the materials into a number of

2    separate locations where I understand the conspirators affixed

3    logos and marks that converted the generic products into

4    counterfeit goods.

5         The quantity of the counterfeit goods for which this

6    conspiracy was responsible was significant.  From January 2016

7    through March 2018, the company involved in the conspiracy

8    imported approximately 385,280 generic Air Jordans from China.

9    Authentic Air Jordans are valued at $190 per pair.  As a

10   result, the conspiracy as a whole is responsible for over $70

11   million in losses.

12        Now, Ms. Suen was actively involved in the conspiracy.

13   She was involved -- observed on multiple occasions leading,

14   directing others as they unloaded boxes from various shipping

15   containers.  Notably, she was observed at more than one of the

16   locations used by the conspiracy.  She was observed at both

17   what's described as location two and location three.  At

18   location two she arrived with several others and loaded

19   hundreds of boxes into two trucks.  The defendant asserts that

20   her role was merely as a worker at a warehouse, however, she

21   was involved in directing the movement of boxes between at

22   least two separate locations.

23        Moreover, as the government has described here and as

24   counsel for defendant has noted, there are a number of text

25   messages that the government has pointed to that were found on

1   her phone that would show that the defendant had a deeper

2   familiarity with counterfeiting business, including operations

3   in China and in more than one domestic market.  For example, in

4   chats exchanged in April 2018 Suen wrote, "You better have some

5   samples ready.  You can bring some samples to show him.  Bring

6   the shoes.  Bring the purses, too.  See if you have any samples

7   to bring to him."

8           In the same chat, Suen continued, referring to a third

9   party, "He said he wants to sell the high quality stuff in

10  New York and the bad stuff in Atlanta.  So he said he wants

11  both materials, one of which is the cheap kind.  Didn't he give

12  you a sample last time?"

13          She continued, "The person said to ship more than

14  1,000 boxes for him.  Ship those that are not on the market.

15  That person said there are no merchandise on the market.  If

16  there is, it will be sold immediately."

17          The government, I believe, properly argues that these

18  communications indicate a familiarity with the counterfeiting

19  business, account plans for the sale of counterfeit goods in

20  more than one market in the United States, and knowledge of the

21  China-based manufacturing of these counterfeit goods.

22          Ms. Suen, like Ms. Huang, is responsible for

23  $146,202.93 in losses.  The reasonably foreseeable loss amount

24  for her was $710,400.

25          So this was a serious crime.  Ms. Suen engaged in

Case 1:18-cr-00827-GHW    Document 133    Filed 03/09/20    Page 34 of 47    34
k2a2SueS kjc

1   conduct that was self-evidently illegal.  She engaged in the

2   crime for her own personal financial gain.  And, again, I do

3   not trust that her tax returns accurately reflect the full

4   amount of her recoveries in connection with this offense.

5        I recognize that this was not a violent offense, that

6   the victim was a large corporation, and the public's trust in

7   its marks.  But fundamentally criminals, such as Ms. Suen,

8   cannot believe that they can engage in such bald, elaborate

9   conduct on multiple occasions without consequences

10  Counterfeiting is a crime that should be taken seriously.  This

11  is a serious offense.

12       Ms. Suen is 45 years old.  She was born in Qenzhou, in

13  Zhejiang Province, in China, in January 1975.  Ms. Suen lived

14  with her parents in China until she was six years old, when her

15  parents and younger brother relocated to Hong Kong, the first

16  of their two moves without Ms. Suen.  Ms. Suen reunited with

17  her parents and brother when she was ten.  I understand that

18  Ms. Suen was charged with caring for her younger brother while

19  her parents and grandparents worked.  Ms. Suen was again left

20  behind when her parents and brother illegally entered the

21  United States looking for a better life for them, but not

22  immediately for Ms. Suen as well, unfortunately.

23       Eventually after her parents obtained permanent legal

24  status for themselves and I presume the brother, they sponsored

25  Ms. Suen's immigration to the United States.  She arrived in

k2a2SueS kjc

1    this country in 1995 when she was 20 and became a naturalized

2    citizen in 2006.

3          Ms. Suen asserts that she lives with her parents now

4    in Queens on the weekends and she lives in the apartment

5    described by counsel for the United States on the Lower East

6    Side of Manhattan during the week, an apartment for which I

7    understand she is receiving Section 8 benefits.

8          Ms. Suen was married in 1999.  The marriage lasted

9    only about a year.  Ms. Suen, as I understand it, is not in

10   touch with her former husband, although she has received

11   several letters of support from members of his family.

12         Ms. Suen which is left to raise her son alone.  He is

13   now, or at least was at the time the PSR was prepared, 19 years

14   old, and is attending college here in Manhattan.

15         I have read his letter, and I have read the letters of

16   his friends and other family members and friends, and I know

17   from them that Ms. Suen has been a dedicated and caring mother

18   and daughter.  I know that she has worked to help the elderly

19   in the community where she works.  This offense does not define

20   her, and I don't take anything away from the positive things

21   that she has done over the course of her life, and those strong

22   relationships are among the factors that will lead me today to

23   impose a downward variant sentence from that suggested by the

24   guidelines.

25         Ms. Suen suffers from a number of health conditions

1    including type 2 diabetes, high cholesterol, and hypertension.

2    She also suffers from asthma, and Ms. Suen denied a need for

3    mental health treatment during her presentence interview

4    although I understand that she may have received some help in

5    2000 shortly after her divorce.

6         Ms. Suen has no reported history of substance abuse.

7         Ms. Suen graduated from high school before coming to

8    the United States.  She has had a series of legitimate jobs

9    since.  Since 2018 she worked at the senior center in Queens.

10   From 2012 until 2018 she worked at a kitchen and bath supply

11   company.  Before that she worked as a bartender for about 14

12   years, a place where I understand she met her former husband.

13        Most recently, Ms. Suen I should say has no prior

14   criminal convictions, but unfortunately this is not her first

15   encounter with the law.  This is not her first encounter with

16   the law with respect to counterfeiting of goods.  Ms. Suen was

17   arrested in 2007 and charged with trademark counterfeiting and

18   deceptive business practices.  Those charges were dismissed, I

19   understand it, in just 2014, after, as I understand it,

20   Ms. Suen completed an accelerated rehabilitative disposition

21   program.

22        What is significant about that incident is that this

23   crime is not her first involvement in the criminal justice

24   system for counterfeiting.  She had a wake-up call, an

25   interaction with law enforcement regarding counterfeiting and

1   why it is illegal, and she had an opportunity from that point

2   to not sell counterfeit goods.  But she continued to do so.

3   Moreover, she did so in the series of incidents involved in

4   this case in 2018, which is a relatively short number of years

5   after receiving a dismissal of her prior charges, suggesting to

6   me fundamentally that she did not take advantage of the

7   opportunity to learn from the prior treatment of her conviction

8   about the importance of complying with the law.

9          Now, I believe that a meaningful sentence is important

10  in this case to promote respect for the law and to impose a

11  just punishment.  I'm required to consider the deterrent effect

12  both on Ms. Suen personally and also the need to deter others

13  from committing this type of crime.

14          With respect to personal deterrence, I do have some

15  concern about the possibility that Ms. Suen will be tempted to

16  recidivate.  Ms. Suen has had legitimate jobs, but she engaged

17  in this illegally obvious illegal conduct in order to

18  supplement her income.  She was arrested for selling

19  counterfeit goods before and charged.  As I understand it, she

20  participated in a rehabilitation program but did not take

21  advantage of that opportunity to turn away from criminal

22  conduct.  Instead, she engaged in this offense.  So I fear

23  fundamentally that the perceived financial pressures or need

24  that led Ms. Suen to engage in this offense may tempt her

25  again.

k2a2SueS kjc

1          I recognize that Ms. Suen is actively involved in the

2     lives of her parents and her son, but they are all adults.  And

3     also significantly her support and her responsibilities to her

4     family did not stop her from engaging in this obviously

5     criminal course of conduct.

6          I also have to consider the goal of general

7     deterrence, and this factor weighs substantially in my

8     decision.  I say that because fundamentally this is a serious

9     offense.  Those that perpetrate it should be aware that it is a

10    serious crime, one that exposes them to substantial risk; and

11    by imposing this meaningful sentence, I hope that it will be

12    effective to dissuade others from engaging in similar conduct

13    in a way that unfortunately Ms. Suen's treatment in

14    Pennsylvania was not.

15         I have considered the extent to which Ms. Suen will be

16    able to use the period of incarceration for educational or

17    vocational training, medical care, or other correctional

18    treatment.  Here, this factor weighs against a substantial

19    incarceratory sentence.  Ms. Suen has completed a high school

20    education outside of this country.  I do not expect that a

21    lengthy prison stay will advance her need for vocational

22    training, given that she is currently employed and that she has

23    a history of legitimate work.  I expect that Ms. Suen will be

24    able to receive appropriate treatment for medical conditions

25    while incarcerated.

1          I have considered the kinds of sentences available.

2    In this case I believe that a sentence involving a term of

3    incarceration is appropriate.  I have given serious

4    considerations to the guidelines and the policy statements.  In

5    this case I believe that a nonguidelines sentence is

6    appropriate.  I reach this conclusion having weighed all of the

7    3553(a) factors and the purposes of sentencing, but let me

8    highlight the principal reasons for my decision to impose a

9    nonguidelines sentence and a downward variance.

10         First, while I believe that this is a serious offense,

11   I recognize fully that it is not a crime of violence or a crime

12   that suggests that there is substantial risk to the community

13   going forward.  I believe that a downward variance is warranted

14   on that basis.

15         Second, while for the reasons that I described earlier

16   I believe that there is a meaningful risk that Ms. Suen will

17   again be tempted to recidivate, I believe that, given her

18   history and family support and responsibilities, the risk is

19   relatively modest and that a more extended term of imprisonment

20   is not necessary in order to prevent Ms. Suen from

21   recidivating.

22         I have considered the need to avoid unwarranted

23   sentencing disparities.  On balance, given the personal

24   characteristics of Ms. Suen and the nature of her involvement

25   in this offense, I believe that this sentence is appropriate

k2a2SueS kjc

1    for her.

2         As counsel for defendant suggested, no two sentencings

3    is alike.  There are a variety of circumstances that are unique

4    to each individual who comes before the court at sentencing

5    both with respect to their personal characteristics and the

6    nature of their involvement in the offense.  Here I will simply

7    note that, as counsel for defendant said, there is, I believe,

8    little that appropriately separates the ultimate conclusion of

9    the court with respect to the sentences of Ms. Huang and

10   Ms. Suen.  They are, in my view, substantially more responsible

11   than the Qus, who I previously sentenced based on the nature of

12   their involvement in the offense.  The Qus moved boxes with

13   respect to the father and the other son whose involvement was

14   also substantially more limited than that of Ms. Suen or

15   Ms. Huang based on the information presented to me.

16        I have considered the need to provide restitution to

17   the victims of this offense.  That factor weighs in favor of a

18   shorter incarceratory sentence here.

19        With that, Ms. Suen, can I ask you to please rise for

20   the imposition of sentence.

21        Thank you, Ms. Suen.

22        It is the judgment of this court that you be sentenced

23   to a year and a day of imprisonment.

24        Following your term of imprisonment, I am sentencing

25   you to a term of two years of supervised release.

k2a2SueS kjc

1          The mandatory conditions of supervised release shall

2    apply.  They are:

3          The defendant shall not commit another federal, state,

4    or local crime.

5          The defendant shall not unlawfully possess a

6    controlled substance.

7          The defendant shall refrain from any unlawful use of a

8    controlled substance.

9          The mandatory drug testing condition is suspended

10   because the court has determined that the defendant poses a low

11   risk of future substance abuse.

12         The defendant shall cooperate in the collection of DNA

13   as directed by the probation officer.  The standard conditions

14   of supervised release 1 through 12 shall apply.

15         In addition, the following special conditions shall

16   apply:

17         The defendant shall submit her person and any

18   property, residence, vehicle, papers, computer, other

19   electronic communication, data storage devices, cloud storage,

20   or media and effects to a search by any United States probation

21   officer and, if needed, with the assistance of any law

22   enforcement.  The search is to be conducted when there is

23   reasonable suspicion concerning violation of a condition of

24   supervision or unlawful conduct by the person being supervised.

25   Failure to submit to a search may be grounds for revocation of

k2a2SueS kjc

1    release.  The defendant shall warn any occupants that the

2    premises may be subject to searches pursuant to this condition.

3    Any search shall be conducted at a reasonable time and in a

4    reasonable manner.

5            The defendant shall provide the probation officer with

6    access to any requested financial information.  The defendant

7    shall not incur new credit charges or open additional lines of

8    credit without the approval of the probation officer unless she

9    is in compliance with the installment payment schedule.

10           The defendant shall be supervised in her district of

11   residence.

12           There will be no fine because the probation department

13   reports that the defendant is unable to pay one.

14           The defendant must pay to the United States a total

15   special assessment of $100.

16           Counsel for the United States, I understand that the

17   government is not seeking forfeiture here, is that correct?

18           MR. NESSIM:  That's correct, your Honor.

19           THE COURT:  Thank you.

20           I order that the defendant pay restitution to the

21   victim of the offense in the amount of $146,202.92.  I have

22   been handed an order of restitution which I am executing.

23   Payments by the defendant shall be made in accordance with the

24   provisions of the order of restitution.

25           In sum, the order requires that the defendant commence

k2a2SueS kjc

monthly installment payments in an amount equal to 10 percent
of her gross income payable on the first of each month 30 days
upon release from prison.  The order also includes rules
requiring the defendant to make installment payments toward her
restitution obligation and that she may do so through the
Bureau of Prisons inmate financial responsibility plan.  The
restitution order itself provides additional payment
requirements which I will not detail here but will be included
in the judgment.  The defendant shall notify the United States
Attorney for this district within 30 days of any change of
mailing or residence address that occurs while any portion of
the restitution remains outstanding.

        Counsel, does either counsel know of any legal reason
why this sentence shall not be imposed as stated?

        MR. NESSIM:  No, your Honor.

        MR. BRILL:  We know of none, Judge.

        THE COURT:  Thank you.

        The sentence as stated is imposed.  I find that
sentence to be sufficient, but not greater than necessary, to
comply with the purposes of sentencing as set forth in
18 U.S.C. Section 3553(a).

        Thank you very much, Ms. Suen.  You can be seated.

        Ms. Suen, you have the right to appeal your conviction
and sentence except to whatever extent you may have validly
waived that right as a part of your plea agreement.  The notice

k2a2SueS kjc

1    of appeal must be filed within 14 days of the judgment of

2    conviction.  If you are not able to pay the cost of an appeal,

3    you may apply for leave to appeal *in forma pauperis*.  If you

4    request, the Clerk of Court will prepare and file a notice of

5    appeal on your behalf.

6              Are there any other applications, counsel?

7              I'm happy to take up the application to permit

8    Ms. Suen to self-surrender.

9              Are there any other applications at this time?  First

10    counsel for the United States.

11              MR. NESSIM:  The government moves to dismiss the open

12    count against the defendant.

13              THE COURT:  Thank you.

14              Counsel for defendant, what is your position on that

15    request?

16              MR. BRILL:  No objection.

17              THE COURT:  Thank you.  I'm dismissing the open count

18    against the defendant.

19              Counsel for defendant, any other application?

20              MR. BRILL:  Yes, your Honor, just to the extent your

21    Honor is able to recommend to the BOP that Ms. Suen be

22    designated to a facility obviously that caters to her gender

23    but also is close in proximity to New York City.

24              THE COURT:  Thank you.

25              I would be happy to include a recommendation that

k2a2SueS kjc

1    Ms. Suen be placed in a facility close to New York City to

2    facilitate visits by her family members, and I will include

3    that.

4            Counsel for the United States, what's your view

5    regarding the defendant's request that the defendant be

6    permitted to self-surrender?

7            MR. NESSIM:  No objection to defendant's voluntary

8    surrender.

9            THE COURT:  Thank you.

10           Counsel for defendant, when would you propose that I

11   set as the date upon which Ms. Suen must surrender herself?

12           MR. BRILL:  Can I just have a moment, your Honor?

13           THE COURT:  Fine.

14           (Pause)

15           MR. BRILL:  So Ms. Suen's son's birthday is April 17.

16   Would the court see fit for a date after that?

17           THE COURT:  Thank you.

18           What date do you propose?

19           MR. BRILL:  Any time after.

20           THE COURT:  Thank you.

21           April 17?

22           MR. BRILL:  That is the birthday.  Perhaps the 18th.

23   I don't have a calendar with me.  I'm sorry, your Honor, but if

24   the 18th is a weekday, then we will respectfully ask for that

25   day.

k2a2SueS kjc

1          THE COURT:  Thank you.

2          It's a Saturday.

3          MR. BRILL:  So maybe the 20th.

4          THE COURT:  Counsel for the United States, what's your

5    view?

6          MR. NESSIM:  No objection.

7          THE COURT:  Thank you.  Good.

8          So, Ms. Suen, I am going to permit you to surrender

9    yourself.  You must do so on April 20 to the location

10   designated by the Bureau of Prisons.  If for any reason the

11   Bureau of Prisons has not designated a facility for you by that

12   date, which I do not expect, you must surrender yourself here

13   at the office of the United States Marshal on that date.  When

14   I say "here," I'm referring to this courthouse at 500 Pearl

15   Street.  I expect, however, that it is more likely than not

16   that the BOP will have designated a facility for you by then.

17         Between now and the date of yourself self surrender,

18   all of the conditions of your pretrial release will apply.  If

19   you fail to appear as ordered, there will be I expect a strong

20   possibility of collateral consequences for your failure to

21   appear at the designated facility on the date that I am

22   establishing.  Good.

23         So, counsel, anything else for us to take up before we

24   adjourn?

25         Counsel for the United States.

k2a2SueS kjc

1          MR. NESSIM:  No, your Honor.  Thank you.

2          THE COURT:  Thank you.

3          Counsel for defendant.

4          MR. BRILL:  No.  Thank you for your consideration.

5          THE COURT:  Thank you very much.  Thank you very much,

6    Ms. Suen.  Thank you to her family members, as well.  Thank you

7    all.

8                              oOo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25